Hon. James C. O'Shea Commissioner of General Services Office of General Services
This is in response to your letter of May 5, 1978 in which you request my opinion as to whether the Office of General Services may sub-lease a portion of premises held by it under lease to a restaurant for a term of ten (10) years, notwithstanding the provisions of State Finance Law, Section 161-a (3) which limit certain leases by the Office of General Services to restaurants and other entities to a term of five (5) years.
The premises involved are known as the Ten Eyck Office Building located in Albany, New York and are held by your office as lessee under a lease dated April 15, 1974 between the Office of General Services and the UDC — Ten Eyck Development Corporation as lessor.
You have provided a copy of the main lease, the proposed sub-lease and a copy of Chapter 50 of the Laws of 1973 which authorizes the main lease. We should note initially that in the absence of express restriction a tenancy for a definite period may be sub-let. (Werver v Weinstein, 138 N.Y.S.2d 196 [Mun. Ct., City of New York, 1955]; Fleisch, v Schnaier, 119 App. Div. 815, 104 N.Y.S. 921 [1st Dept., 1907]).
The main lease is for a definite term of forty (40) years. In addition, there is no provision in the main lease restricting or prohibiting a sub-lease by the lessee, or even requiring the approval of the lessor for any sub-lease.
In fact, Section 21.2 of the main lease provides that the lessee shall prepare a leasing plan setting forth, in part, the uses for which the lessee proposes to rent or sub-lease the premises and prospective sub-tenants.
This section further provides that "lessee shall use its best efforts to rent or sub-lease such ancillary retail space in accordance with such plan."
With respect to the plan, Section 21.2 provides that the plan shall call for the rent or sub-lease of such space to first class retail and service establishments.
Therefore, the Office of General Services clearly has a contractual responsibility to enter into sub-leases such as the one proposed.
Section 161-a (3) of the State Finance Law provides that the Commissioner of General Services is authorized:
 "(a) In his discretion, lease space in any public building or other premises under his supervision and control pursuant to this article, to any person, firm or corporation, for the operation of restaurants, vending stands for the sale of newspapers, periodicals, confections, tobacco products and such other articles as may be approved by him for each stand, and for bootblack service. Such lease shall be subject to such terms and conditions as he may deem proper, but for a term not exceeding five years, which term may be extended and renewed." (Emphasis added)
As quoted above, the five (5) year restriction of this section applies only to property held by virtue of the authority of the Article of which it is part, namely Article XI of the State Finance Law.
The property in question, however, was leased under the authority of Chapter 50 of the Laws of 1973, which chapter was a separate act not incorporated into the provisions of Article XI of the State Finance Law.
Chapter 50 of the Laws of 1973 provides:
 "The commissioner, with the approval of the director of the budget, for state participation and to provide state assistance for the redevelopment of the Capital City central business district and its environs, is hereby authorized and empowered to enter into a contract or contracts providing for a lease to the state by the New York state urban development corporation, or one or more of its subsidiary corporations, or an assignee or successor in interest of any of the above, of approximately two hundred and fifty thousand square feet of office space contained within one or more office buildings, suitable for the primary use of state departments, agencies and employees of the state, to be constructed as a project of the New York state urban development corporation, at a location in the city of Albany known as the `Ten Eyck Project' and bounded generally by State Street, North Pearl Street, Lodge Street and Pine Street, for possession upon completion of construction work and for a term not exceeding forty years and upon such terms and conditions, including a fair and reasonable annual rental, as may be agreed upon; provided, that the attorney general shall pass upon the form and sufficiency and manner of execution of any lease or leases hereby authorized and the same shall not be effective unless so approved by him; and provided further, that the provisions of subdivision two of section one hundred sixty-one-a of the state finance law limiting the period for which the commissioner is authorized to lease premises for a term not exceeding five years shall not be applicable to leases executed herewith." (Emphasis added)
The above quoted discretion given to the Commissioner of General Services in Chapter 50 of the Laws of 1973 indicates that the Legislature intended to leave the question of sub-lease, amongst other questions, to the determination of the parties. As quoted above, the parties determined that the lessee shall have an affirmative duty to enter into sub-leases with retail firms, without restriction as to term. In addition, Chapter 50 further provides that its purpose was to "provide state assistance for the redevelopment of the Capital City central business district."
It is fundamental that the primary rule of statutory construction is that a statute shall be construed so as to give effect to its intended purpose (Astman v Kelly, 2 N.Y.2d 567, 141 N.E. 899, 161 N.Y.S.2d 860 [1967]).
You advise that a ten-year term is necessary to attract retail tenants, by giving them an adequate term to recover the capital costs of necessary repairs and other modifications to the retail establishments.
Accordingly, I would conclude that Chapter 50 of the Laws of 1973 should not be construed in such fashion as to limit the parties to the main lease in sub-leasing the premises to a term which would make such sub-leases commercially unfeasible.
In my opinion, therefore, the proposed sub-lease to the restaurant for a term of ten years is authorized by virtue of the provisions of Chapter 50 of the Laws of 1973.
No legal obligation is imposed upon a landlord of commercial space, leased to the State, to adapt the premises to the requirements of the Department of Health, Education and Welfare by Part 84 of Title 45 of the Code of Federal Regulations or the lease clauses submitted.
Dated: November 9, 1978
Hon. James C. O'Shea Commissioner Office of General Services
This is in reply to your recent letter asking for an opinion of the Attorney General with respect to the impact of Title 45, Code of Federal Regulations, Part 84, entitled: "Nondiscrimination on the Basis of Handicap in Programs and Activities Receiving or Benefiting from Federal Financial Assistance". Your inquiry, in effect, requests a determination whether any financial obligations can be imposed upon private landlords to make structural modification of facilities leased to the State by reason of the adoption of the aforesaid regulations by the Department of Health, Education and Welfare.
Part 84 of Title 45 is an outgrowth of the enactment of the Rehabilitation Act of 1973, § 504 (Public Law 93-112,29 U.S.C. § 794). As a result of such enactment, the President of the United States issued Executive Order No. 11914 on April 28, 1976. Said Order directed the Secretary of Health, Education and Welfare to coordinate the implementation of Section 504 of the Rehabilitation Act of 1973, as amended, and directed the Secretary to establish standards for determining who are handicapped individuals and what are discriminatory practices within the meaning of said statute which provides:
 "No otherwise qualified handicapped individual in the United States . . . Shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."
The directives contained in said Executive Order require that regulations be adopted to provide that "If voluntary compliance cannot be secured by informal means, compliance . . . may be effected by the suspension or termination of, or refusal to award or continue, Federal financial assistance or by other appropriate means authorized by law . . ."
Part 84 of Title 45 of the Code of Federal Regulations promulgated pursuant to statute and Executive Order, in Section 84.3(f) defines a recipient as "any state or its political subdivision, any instrumentality of a state or its political subdivision, any public or private agency, institution, organization, or other entity, or any person to which Federal Financial assistance is extended directly . . . but excluding the ultimate beneficiary of the assistance", while Section 84.3(h) defines Federal financial assistance as "any grant, loan, contract . . . or any other arrangement by which the Department provides or otherwise makes available assistance in the form of funds . . ."
The Regulations require the applicant-recipient of Federal financial assistance to comply with the provisions thereof and provide penalties for noncompliance. They are directed toward the entities receiving such funds and not against third parties (landlords) who are not recipients of said financial assistance. If the State fails to provide suitable facilities for the handicapped, including the making of structural changes to leased premises where these facilities are inadequate, the State will suffer the loss of Federal grants in aid.
It is apparent from the foregoing that the State is required to comply with the Federal statute and regulations as a condition to obtaining or retaining a grant of Federal financial assistance to be utilized in a program to aid the handicapped.
In essence, your request for this opinion hinges upon whether or not the lease clauses referred to below can reasonably be interpreted to shift the financial responsibility of such compliance upon your landlords.
You advise that the following provision is contained in a majority of State leases executed prior to 1977:
 "(The Landlord shall take good care of the demised premises, fixtures and appurtenances and make all repairs necessary to preserve the premises in good order and condition at its own cost and expense.) The Landlord shall comply with all laws, rules, orders, ordinances and regulations at any time issued or in force, applicable to the demised premises, of the borough, city, county or other municipality, State or federal governments, and each and every department, bureau and official thereof, (and of any board of fire underwriters having jurisdiction in the premises)." (Emphasis supplied.)
You further advise that since early 1977 the foregoing provision has been revised as follows:
 "The Landlord shall ensure that the premises comply with all laws, rules, orders, ordinances, and regulations at any time issued or in force, applicable to the demised premises, of the borough, city, county or other municipality, State or federal governments, and each and every department, bureau and official thereof, (and of any board of fire underwriters having jurisdiction in the premises). The Tenant in its use of the demised premises, agrees to comply with all applicable laws, rules, orders, ordinances and regulations." (Emphasis supplied.)
The above lease clauses are commonly referred to as "violation clauses" by real estate practitioners since such clauses require either the landlord or the tenant to comply with or remove violations as determined by governmental authority and relating to the condition of leased premises.
 "The term `violations'," said Genung, J., "is almost universally used and accepted as meaning a violation of which notice has been given by the respective department charged with the enforcement of the particular provisions of law or ordinance involved." Liebmann v Aldhous (Municipal Court 1918) 105 Misc 728, 173 NYS 553 (Rasch-New York Landlord and Tenant, 2nd Ed., Chapter 18, § 580).
In my view, noncompliance by the State with the above Federal statute and regulations is not a violation within the meaning and intent of the lease clauses presented for review and, therefore, the landlord is not obligated under said clauses to bear the cost of structural changes required for the obtaining or retention by the State of these Federal Grants to aid the handicapped.
In any event, failure to comply does not prevent the use of the leased premises by the State; it merely may affect its right to receive Federal funds.
In answer to your inquiry, no legal obligation is imposed upon a landlord of commercial space, leased to the State, to adapt the premises to the requirements of the Department of Health, Education and Welfare by Part 84 of Title 45 of the Code of Federal Regulations or the lease clauses submitted.
In future leases if it is at all contemplated that the lease premises are to be used for a program benefiting from Federal Financial Assistance and the premises do not comply with Title 45, Code of Federal Regulations, Part 84 with respect to nondiscrimination on the Basis of Handicap it is suggested that the lease contain a specific stipulation that the landlord shall make necessary alterations to the premises to comply with the Federal provisions.